# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

DEBORAH G.,[1]

        Plaintiff,

v.

Commissioner, Social
Security Administration,

        Defendant.

3:19-cv-00577-BR

OPINION AND ORDER

**TIM D. WILBORN**
P.O. Box 370578
Las Vegas, NV 89137
(702) 240-0184

        Attorney for Plaintiff

---

    [1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**JOSEPH JOHN LANGKAMER**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2212

       Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Deborah G. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on January 29, 2015, alleging a disability onset date of September 28, 2014.

2 - OPINION AND ORDER

Tr. 188-89.[1]  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on February 14, 2018.  Tr. 33-60.  Plaintiff was represented at the hearing.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on March 15, 2018, in which he found Plaintiff was not disabled before her December 31, 2017, date last insured and, therefore, is not entitled to benefits.  Tr. 13-27.  Pursuant to 20 C.F.R. § 404.984(d) that decision became the final decision of the Commissioner on March 15, 2019, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on October 23, 1970, and was 47 years old at the time of the hearing.  Tr. 188.  Plaintiff completed high school and two years of college.  Tr. 55.  Plaintiff has past relevant work experience as a bartender, administrative clerk, and truck driver.  Tr. 25.

Plaintiff alleges disability during the relevant period due to small fiber neuropathy, obesity, degenerative disc disease of the cervical and lumbar spine, and a cognitive disorder.  Tr. 86-

---

[1] Citations to the official transcript of record filed by the Commissioner on August 23 2019, are referred to as "Tr."

87.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 19-20, 22-24.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is

"relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the

meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R.

§ 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity from her September 28, 2014, alleged onset date through her December 31, 2017, date last insured. Tr. 15.

At Step Two the ALJ found Plaintiff had the severe impairments of small fiber neuropathy (SFN), obesity, and cervical degenerative disc disease during the relevant period. Tr. 15. The ALJ found Plaintiff's impairments of vision changes and mild cognitive disorder were not severe during the relevant period and that she had a nonmedically determinable impairment of multiple sclerosis during the relevant period. Tr. 17, 20.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments during the relevant period did not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 22. The ALJ found Plaintiff had the RFC to perform "a reduced range of sedentary work" during the relevant period. Tr. 22. Specifically, the ALJ found Plaintiff could lift and carry a maximum of ten pounds; could stand and/or walk for two hours in an eight-hour workday; could sit for six hours in an eight-hour work day; could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; could frequently stoop, kneel, crouch, and crawl. Tr. 22. The ALJ stated Plaintiff "needed to avoid concentrated exposure to

extreme heat, extreme cold, and hazards such as moving machinery and unprotected heights." Tr. 22. Finally, the ALJ noted Plaintiff "needed ready access to a restroom." Tr. 22.

At Step Four the ALJ found Plaintiff could not perform her past relevant work during the relevant period. Tr. 25.

At Step Five the ALJ found Plaintiff could have performed other work that existed in the national economy during the relevant period. Accordingly, the ALJ concluded Plaintiff was not disabled during the relevant period. Tr. 26-27.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) partially rejected Plaintiff's testimony; (2) gave little weight to the Third-Party Function Report of Plaintiff's husband, Christopher G., and to the opinion of Plaintiff's vocational rehabilitation counselor, Clint deLongpre; (3) partially rejected the opinions of Jim James, M.D., and Jacqueline Eriksen, M.D., treating physicians; and (4) provided an incomplete hypothetical to the VE.

## I. The ALJ erred when he partially rejected Plaintiff's testimony.

As noted, Plaintiff contends the ALJ erred when he partially rejected Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom

testimony:  The claimant must produce objective medical evidence
of an impairment or impairments, and she must show the impairment
or combination of impairments could reasonably be expected to
produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir.
1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir.
1991).  The claimant, however, need not produce objective medical
evidence of the actual symptoms or their severity.  *Smolen*, 80
F.3d at 1284.

If the claimant satisfies the above test and there is not
any affirmative evidence of malingering, the ALJ can reject the
claimant's pain testimony only if he provides clear and
convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742,
750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th
Cir. 1995)).  General assertions that the claimant's testimony is
not credible are insufficient.  *Id*.  The ALJ must identify "what
testimony is not credible and what evidence undermines the
claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified she was unable to work
during the relevant period because she has severe pain everywhere
from small fiber neuropathy (SFN).  Plaintiff stated the pain is
the worst in her legs and feet.  As a result of her SFN Plaintiff
suffers from muscle spasms as well as poor body-temperature
regulation.  Plaintiff regularly experiences muscle weakness,
numbness, tingling, and burning.  Plaintiff has "very frequent,

unexpected bathroom trips to drain [her] internal organs [when
they are] spasming or flaring [and] . . . sometimes [she] can't
even feel [her] bladder." Tr. 49. Plaintiff also has times when
she cannot think clearly, form sentences, or process what people
are telling her" either as a result of her pain or because of
"white matter lesions" on her brain. Tr. 39. Plaintiff
testified "on a good day" she can get out of bed and her legs
"agree to work [and her] muscles aren't completely spasmed up,"
can manage her personal-care needs except for blow-drying her
hair, can prepare quick and easy meals, and can leave the house
for a couple of hours. Tr. 44. Plaintiff stated she has two or
three good days per week. On a normal day it "usually takes
[Plaintiff] three to four hours just to be able to function," she
becomes overheated easily, and she has "sudden bouts of fatigue."
Tr. 44. On a bad day Plaintiff must stay in bed most of the day,
suffers severe spasms, needs help getting out of bed, suffers
esophagus motility issues that cause her to have trouble
swallowing, and struggles to take medication. Tr. 45.

Plaintiff stated she drives "very rarely and not very far"
and can fold half a load of laundry, but her husband does most of
the household chores. Tr. 46.

Plaintiff takes medication to help with pain, but taking
enough to address her pain adequately results in the loss of
"brain function" including the ability to understand what people

are saying, and problems concentrating.  Tr. 47.  Plaintiff takes
nitroglycerin for her esophageal spasms, but it gives her
headaches.

The ALJ found Plaintiff's "medically determinable
impairments could reasonably be expected to cause [Plaintiff's]
alleged symptoms."  Tr. 21.  Plaintiff's "statements concerning
the intensity, persistence and limiting effects of these
symptoms, [however,] are not entirely consistent with the medical
evidence and other evidence in the record."  Tr. 21.  The ALJ
noted Plaintiff often had "generally normal findings on physical
examination," including normal gait, intact sensation, normal
strength, and normal reflexes.  The ALJ also noted Plaintiff's
August 2015 MRI was essentially normal.  Examining radiologist
Jay Post, M.D., noted Plaintiff had an "[e]ssentially normal
unenhanced and enhanced brain MRI exam."  Tr. 421.  Dr. Post
noted Plaintiff had two or three "very tiny equivocal T2
hyperintensities seen in the left posterior temporoparietal white
matter only on sagittal FLAIR images [that] are of doubtful
clinical significance and may be due to normal variation or
minimal chronic small vessel ischemic disease rather than
demyelinating disease."  Tr. 421.

The record, however, also reflects Plaintiff has SFN, which
causes nerve pain and spasms.  Treating physician Jim James,
M.D., explained to Plaintiff in January 2015 that SFN is a

progressive disorder that can cause memory problems and temperature imbalances.  Tr. 373.  Treating physician Jacqueline Eriksen, M.D., noted in August 2015 that Plaintiff's pain medication is effective to control only "about 30%" of Plaintiff's pain from SFN.  Tr. 470.  In September 2015 Dr. Eriksen stated a 30% reduction in pain is "usually the maximal improvement with medications" for SFN.  Tr. 497. Dr. Eriksen also noted Plaintiff's "memory issues" are likely related to her chronic pain and stress.  Tr. 497.  In June 2016 Plaintiff had diminished sensation to light touching of her feet. In September 2016 Plaintiff had worsening spasms, pain, and fatigue; she was using a walker; and she was described as having a "wide-based gait; antalgic gait, slow, painful-appearing." Tr. 1084.  In November 2016 a modified swallowing function esophagram established Plaintiff suffers from jackhammer esophagus, which causes her to have trouble swallowing anything other than "thin liquids."  Tr. 733. In February 2017 Dr. James noted Plaintiff suffers from a mild cognitive impairment and that "chronic pain can cause pseudodementia."  Tr. 1073.

The Court concludes on this record that the ALJ erred when he partially rejected Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms because the ALJ failed to support his opinion with substantial evidence in the record.

**II.  The ALJ's Evaluation of Lay-Witness Statements.**

Plaintiff alleges the ALJ erred when he gave little weight
to the Third-Party Function Report of Plaintiff's husband,
Christopher G., and to the opinion of Plaintiff's vocational
rehabilitation counselor, Clint deLongpre.

Lay-witness testimony regarding a claimant's symptoms is
competent evidence that the ALJ must consider unless he
"expressly determines to disregard such testimony and gives
reasons germane to each witness for doing so." *Lewis v. Apfel*,
236 F.3d 503, 511 (9th Cir. 2001).  *See also Merrill ex rel.*
*Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ,
in determining a claimant's disability, must give full
consideration to the testimony of friends and family members.").
The ALJ's reasons for rejecting lay-witness testimony must also
be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir.
2006).

**A.    Christopher G.**

On October 27, 2015, Christopher G. completed a Third-
Party Function Report in which he stated Plaintiff suffers
symptoms and limitations similar to those set out by Plaintiff in
her testimony.  Specifically, he stated Plaintiff cannot work
because she has to lie down several times a day due to
severe/sudden pain, fatigue, and muscle weakness.  Tr. 255.
Plaintiff suffers from dizziness, memory problems, balance

issues, and the need to make sudden trips to the bathroom.
Plaintiff can perform light housekeeping "in between naps and
resting," can make simple meals, and is able to shop for 30
minutes or less once a week. Tr. 256. Plaintiff needs help
getting out of the bathtub, cannot style her hair, cannot stand
for long periods, cannot lift over 15 pounds, forgets things,
cannot stand for more than two hours at the most, and uses a
walker or cane.

The ALJ gave little weight to Christopher G.'s
statements. As noted, Christopher G.'s report is substantially
similar to Plaintiff's testimony. The Court has already
concluded the ALJ erred when he partially rejected Plaintiff's
testimony because the ALJ failed to provide support for his
opinion based on substantial evidence in the record. The Court
also concludes on the same basis that the ALJ erred when he
rejected Christopher G.'s statement.

## B.   Clint deLongpre

On January 25, 2018, Plaintiff's Vocational
Rehabilitation Counselor, Clint deLongpre, submitted a letter in
which he stated he observed Plaintiff walking into a meeting room
in November 2014 and it was evident at that time that she "was
experiencing significant pain and discomfort along with having
some balance issues." Tr. 1126. deLongpre also noted Plaintiff
was "experiencing some cognitive difficulties, having problems

finding the right words and keeping her conversation on track."
Tr. 1126.  deLongpre stated he has "watched [Plaintiff's]
condition slowly deteriorate over the past three years" while
working with her, and he has noticed she is unable to maintain
her balance, relies on a cane for support, and occasionally must
use a walker.

        The ALJ gave little weight to deLongpre's letter
because he is not an acceptable medical source and his opinion is
"not supported by the medical evidence of record."  Tr. 24.  To
the extent that the ALJ rejected deLongpre's statement on the
basis that he is not a medical professional, the courts have made
clear that is not a germane basis for rejecting lay-witness
statements.  *See, e.g., Bruce v. Astrue*, 557 F.3d 1113, 1116 &
n.1 (9ᵗʰ Cir. 2009)(it was improper for the ALJ to reject
claimant's wife's testimony on the ground that she was not
knowledgeable in the medical or vocational fields); *Agatucci v.
Colvin*, No. 6:13-cv-01626-MC, 2015 WL 1467209, at *10 (D. Or.
Mar. 30, 2015)(a lay witness's lack of medical training is not a
germane reason to reject that witness's testimony); *Sims v.
Astrue*, No. 3:10-CV-1040-HA, 2012 WL 364055, at *6 (D. Or.
Feb. 2, 2012)(it was improper for the ALJ to reject lay-witness
opinions because the witness lacked medical expertise).  Although
a lay witness cannot diagnosis an impairment, here deLongpre
merely observed Plaintiff's symptoms and deLongpre's report did

not contain a diagnosis.  Thus, the ALJ erred when he rejected deLongpre's lay-witness testimony on the basis that deLongpre is not an acceptable medical source.

In addition, the Ninth Circuit has made clear that "a lack of support from the 'overall medical evidence' is also not a proper basis for disregarding" lay-witness testimony.  *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017)

In summary, the Court concludes on this record that the ALJ erred when he rejected the lay-witness statements because he failed to give reasons germane to the witnesses for doing so.

**III. Treating Physicians' Opinions.**

Plaintiff alleges the ALJ erred when he gave "little weight" to the opinions of Drs. James and Eriksen, Plaintiff's treating physicians.

**A.    Dr. James**

On August 25, 2015, Dr. James completed a Medical Source Statement in which he noted he had been treating Plaintiff since January 2015.  Dr. James stated a biopsy established Plaintiff has SFN.  Plaintiff's symptoms include severe pain throughout her body described as burning, tingling, and/or stabbing; intolerance to heat and cold; and difficulty walking or standing.  Tr. 422.  Dr. James noted Plaintiff has tried numerous medications, but they have not provided relief from her symptoms. Dr. James opined Plaintiff can sit for ten or fifteen minutes at

one time before needing to get up and can stand up to 45 minutes at one time before needing to sit down.  Dr. James stated Plaintiff needs to lie down occasionally throughout the day; would need to take breaks hourly throughout an eight-hour work day; and would need to rest for two-to-three hours before returning to work due to pain, paresthesias, and numbness. Dr. James opined Plaintiff would be "off task" more than 25% of the time during an eight-hour work day and would miss more than four days of work per month due to her symptoms.  Tr. 425.

The ALJ found Dr. James's opinion is "not entitled to controlling weight" because it is "not well supported by treatment records" and is contradicted by the report of Raymond Nolan, M.D., examining physician.  Tr. 24.  Dr. James's treatment records reflect in July 2015 Plaintiff reported she had significant leg weakness that "comes and goes" as well as significant fatigue.  Tr. 391.  Plaintiff reported "[s]ome days it only takes 30 minutes of activity, *ie*:  doing normal household chores and she has to sit down, while other days she might be able to go 4 hours before having to stop and lie down for several hours."  Tr. 391.  Plaintiff also reported using a cane and attempting to get a walker.  In June 2015 Dr. James reported Plaintiff was experiencing significant swelling in her legs and arm and having more pain in her limbs.  Tr. 366.  Plaintiff reported experiencing a significant amount of pain "walking any

distances." Tr. 366. Dr. James's treatment notes also contain several references to Plaintiff experiencing severe fatigue, difficulty walking, an "antalgic" gait, and memory problems as well a variability in the severity of Plaintiff's symptoms. In addition, as noted, pain medications typically relieve only 30% of a patient's pain from and symptoms of SNF. Tr. 470. The Court, therefore, concludes the ALJ erred when he found Dr. James's opinion was not well-supported by his medical records.

As noted, the ALJ also did not give controlling weight to Dr. James's opinion on the ground that it is inconsistent with Dr. Nolan's opinion. On May 4, 2015, Plaintiff was seen by Dr. Nolan for an administrative examination. Dr. Nolan found Plaintiff had normal and equal grip strength, normal deep-tendon reflexes, no muscle atrophy, and a normal mental-status examination. Dr. Nolan opined Plaintiff was able to stand and/or walk for two hours in an eight-hour work day, did not have any restrictions on sitting, and was able to carry ten pounds frequently and twenty pounds occasionally. The ALJ, however, failed to address the fact that the record reflects Plaintiff experiences variability in the severity of her symptoms, that Dr. Nolan saw Plaintiff only one time, and that Dr. James had treated Plaintiff for six months and had seen Plaintiff approximately five times at the time he offered his opinion. The

Social Security Regulations provide when an ALJ does not give the opinion of a treating physician controlling weight, the ALJ must determine the credibility of the medical opinion under the factors set out 20 C.F.R. § 404.1527(c), which include "the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion." *Trevizo v. Berryhill*, 871 F.3d 664, 676 99th Cir. 2017)(citing 20 C.F.R. § 404.1527(c)). The failure to do so constitutes reversible error. *Id*. (The ALJ's rejection of the treating physician's opinion in light of the objective evidence in the record was reversible error because the ALJ failed to consider factors set out in § 404.1527(c)). *See also Kelly v. Berryhill*, 732 F. App'x 558, 563 (9th Cir. 2018)(same); *Elgrably v. Comm'r of Soc. Sec. Admin.*, No. CV-17-04760-PHX-JAT, 2018 WL 5264074, at *8 (D. Ariz. Oct. 23, 2018) (The ALJ erred when he rejected the opinions of the plaintiff's treating physicians because "[a]lthough the ALJ stated that the opinions of [the plaintiff's treating physicians] are 'inconsistent with the medical evidence and unsupported by clinical findings on examination,' . . . the ALJ did not consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion."); *Monroe v. Comm'r of Soc. Sec. Admin.*, No. CV-18-02571-PHX-JAT, 2019 WL

6712055, at *4 (D. Ariz. Dec. 10, 2019)(same).

On this record the Court concludes the ALJ erred when he did not give controlling weight to Dr. James's opinion because the ALJ did not provide specific and legitimate reasons for doing so based on substantial evidence in the record.

**B.  Dr. Eriksen**

On January 31, 2018, Dr. Eriksen completed a Medical Source Statement in which she noted she has been Plaintiff's treating physician since August 2015 and has seen Plaintiff every three or four months.  Dr. Eriksen noted a biopsy reflected Plaintiff has SFN and an esophagram indicated Plaintiff has jackhammer esophagus, which are both "progressive, lifelong" diseases.  Tr. 1121.  Dr. Eriksen noted Plaintiff's symptoms include severe pain, balance issues, heat and cold intolerance, memory and cognition deficiencies, and swallowing issues. Dr. Eriksen noted Plaintiff had tried numerous medications without successful symptom management.  Dr. Eriksen stated Plaintiff would need to take unscheduled breaks from work every thirty-to-ninety minutes due to severe pain, balance issues, and bathroom needs; is capable of carrying less then 10 pounds frequently and 20 pounds occasionally; would be "off task" more than 25% of an eight-hour work day; and would miss more than four days of work per month.  Tr. 1123-24.

The ALJ gave "little weight" to De. Eriksen's opinion

on the grounds that it is inconsistent with Dr. Nolan's opinion
and "it is not supported by treatment records."  Tr. 25.

As with Dr. James's opinion, the ALJ failed to address
the fact that the record reflects Plaintiff experiences
variability in the severity of her symptoms, that Dr. Nolan saw
Plaintiff only one time, and that Dr. Eriksen had treated
Plaintiff for three years and had seen Plaintiff approximately
twelve times when she offered her opinion.  As noted, when an ALJ
does not give the opinion of a treating physician controlling
weight, the ALJ must consider the factors set out 20 C.F.R.
§ 404.1527(c), which include "the length of the treating
relationship, the frequency of examination, the nature and extent
of the treatment relationship, or the supportability of the
opinion."  *Trevizo,* 871 F.3d at 676 (citing 20 C.F.R.
§ 404.1527(c)).  The failure to do so constitutes reversible
error.  *Id.*

In addition, Dr. Eriksen's treatment notes reflect
Plaintiff has jackhammer esophagus, which results in her
inability to swallow anything other than thin liquids at times.
Plaintiff also receives from medication thirty percent relief at
best from her severe pain.  Plaintiff also experiences sudden,
severe pain and spasms, mobility problems requiring her to use a
cane and walker, issues with her cognitive functioning, and
severe fatigue due to her chronic and severe pain.  Plaintiff's

condition is also degenerative.

On this record the Court concludes the ALJ erred when he gave little weight to Dr. Eriksen's opinion because the ALJ did not provide specific and legitimate reasons for doing so based on substantial evidence in the record.

## IV. The ALJ erred when he posed an incomplete hypothetical to the VE.

Plaintiff alleges the ALJ erred when he did not include in his hypothetical to the VE all of Plaintiff's limitations as assessed by Drs. James and Eriksen.

Because the Court has concluded the ALJ erred when he partially rejected the opinions of Drs. James and Eriksen, the Court also concludes the ALJ erred when he failed to include in his hypothetical to the VE all of Plaintiff's limitations as assessed by Drs. James and Eriksen.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting . . . evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

The Court has determined the ALJ erred when he partially rejected Plaintiff's testimony, lay-witness statements, and the opinions of Drs. James and Eriksen. Drs. James and Eriksen stated Plaintiff would miss at least four days of work per month

and would need to take unscheduled breaks several times a day. The VE testified at the hearing that missing more than four days of work per month and/or taking more than two breaks per work day would preclude competitive employment. Tr. 57. The Court, therefore, concludes this matter should not be remanded for further proceedings. *See Schneider v. Comm'r*, 223 F.3d 968 (9th Cir. 2000). *See also Reddick*, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits."); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989)(if remand for further proceedings would only delay the receipt of benefits, judgment for the claimant is appropriate).

Accordingly, the Court remands this matter for the immediate calculation and award of benefits to Plaintiff.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of

benefits.

IT IS SO ORDERED.

DATED this 18th day of February, 2020.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge